# EXHIBIT G

# H.R.6270 - Uyghur Forced Labor Disclosure Act of 2020

116th Congress (2019-2020) | Get alerts

**Sponsor:** Rep. Wexton, Jennifer [D-VA-10] (Introduced 03/12/2020)
**Committees:** House - Financial Services
**Committee Meetings:** 06/25/20 12:00PM
**Latest Action:** House - 03/12/2020 Referred to the House Committee on Financial Services. (All Actions)
**Tracker:** Introduced    Passed House    Passed Senate    To President    Became Law

Summary(0)  **Text(1)**  Actions(2)  Titles(2)  Amendments(0)  Cosponsors(3)  Committees(1)  Related Bills(0)

There is one version of the bill.

**Text available as:** XML/HTML | XML/HTML (new window) | TXT | PDF (PDF provides a complete and accurate display of this text.) ?

**Shown Here:**
**Introduced in House (03/12/2020)**

116TH CONGRESS
2D SESSION

# H. R. 6270

To amend the Securities Exchange Act of 1934 to require issuers to make certain disclosures relating to the Xinjiang Uyghur Autonomous Region, and for other purposes.

## IN THE HOUSE OF REPRESENTATIVES

MARCH 12, 2020

Ms. WEXTON (for herself, Mr. SHERMAN, Ms. NORTON, and Mr. CARSON of Indiana) introduced the following bill; which was referred to the Committee on Financial Services

# A BILL

To amend the Securities Exchange Act of 1934 to require issuers to make certain disclosures relating to the Xinjiang Uyghur Autonomous Region, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Uyghur Forced Labor Disclosure Act of 2020".

**SEC. 2. FINDINGS.**

Congress finds the following:

(1) Since early 2017, the Government of the People's Republic of China has conducted a policy of disappearance, mass internment, and imprisonment of Turkic Muslims, particularly Uyghurs, in China's Xinjiang Uyghur Autonomous Region (XUAR).

(2) Since 2014, Chinese authorities have detained between 800,000 and possibly up to three million Uyghurs, ethnic Kazakhs, Kyrgyz, and other ethnic minorities in forced education, training, and labor camps.

(3) The bi-partisan, bi-cameral Congressional-Executive Commission on China's 2019 Annual Report found numerous reports of forced labor associated with government repression of ethnic minority groups in the XUAR. Detainees performed forced labor in factories both within and outside of internment camps in XUAR.

(4) Radio Free Asia reported in January 2019 that authorities had also sent Uyghurs and Kazakhs from the XUAR to other provinces in China for forced labor.

(5) Comments in March 2018 from the president of the China National Textile and Apparel Council suggested that textile manufacturers were working with XUAR authorities to exploit forced labor.

(6) Companies that work in the XUAR are at great risk of complicity in the human rights abuses being committed in the region.

(7) In a March 2020 report, the Australian Strategic Policy Institute identified 27 factories in nine Chinese provinces that are using Uyghur labor transferred from Xinjiang. These factories indirectly supply global brands, including many American multinational companies.

(8) Forced labor in XUAR is Chinese government policy and due diligence efforts to ensure clean supply chains is nearly impossible due to mass surveillance, pervasive police presence, and intimidation of workers.

(9) The human rights policies, practices, and impacts of publicly traded companies in the United States are material to securities reporting.

(10) An increasing percentage of investors consider human rights risks as a part of their investment decision-making process.

## SEC. 3. DISCLOSURE OF CERTAIN ACTIVITIES RELATING TO THE XINJIANG UYGHUR AUTONOMOUS REGION.

Section 13 of the Securities Exchange Act of 1934 ([15 U.S.C. 78m](15 U.S.C. 78m)) is amended by adding at the end the following:

"(s) DISCLOSURE OF CERTAIN ACTIVITIES RELATING TO THE XINJIANG UYGHUR AUTONOMOUS REGION.—

"(1) IN GENERAL.—Not later than the end of the 180-day period beginning on the date of enactment of this subsection, the Commission shall issue rules to require each issuer required to file an annual report under this section or section 15(d) or a proxy statement under section 14 to disclose in each such report or proxy statement whether, during the period covered by the report or proxy statement—

"(A) the issuer or any affiliate of the issuer, directly or indirectly, engaged with an entity or the affiliate of an entity to import—

"(i) manufactured goods, including electronics, food products, textiles, shoes, and teas, that originated in the XUAR; or

"(ii) manufactured goods containing materials that originated or are sourced in the XUAR;

"(B) with respect to any goods or materials described under subparagraph (A), whether the goods or material originated in forced labor camps; and

"(C) with respect to each manufactured good or material described under subparagraph (A)—

"(i) the nature and extent of the commercial activity related to such good or material;

"(ii) the gross revenue and net profits, if any, attributable to the good or material; and

"(iii) whether the issuer or the affiliate of the issuer intends to continue with such importation.

"(2) AVAILABILITY OF INFORMATION.—The Commission shall make all information disclosed pursuant to this subsection available to the public on the website of the Commission.

"(3) REPORTS.—

"(A) ANNUAL REPORT TO CONGRESS.—The Commission shall—

"(i) conduct an annual assessment of the compliance of issuers with the requirements of this subsection; and

"(ii) issue a report to Congress containing the results of the assessment required under clause (i).

"(B) GAO REPORT.—The Comptroller General of the United States shall periodically evaluate and report to Congress on the effectiveness of the oversight by the Commission of the disclosure requirements under this subsection.

"(4) DEFINITIONS.—In this subsection:

"(A) FORCED LABOR CAMP.—The term 'forced labor camp' means—

"(i) any entity engaged in the 'pairing assistance' program which subsidizes the establishment of manufacturing facilities in XUAR;

"(ii) any entity using convict labor, forced labor, or indentured labor described under section 307 of the Tariff Act of 1930 ([19 U.S.C. 1307](19 U.S.C. 1307)); and

"(iii) any other entity that the Commission determines is appropriate.

"(B) XUAR.—The term 'XUAR' means the Xinjiang Uyghur Autonomous Region.".