```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/31/21
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BYD Company Ltd.,

               Plaintiff,

      –v–

VICE Media LLC,

               Defendant.

---

20-cv-3281 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff BYD Company Ltd. ("BYD") initiated this defamation action against Defendant VICE Media LLC ("VICE") on April 27, 2020. *See* Dkt. No. 1. VICE has moved to dismiss the Complaint. Dkt. No. 17. For the reasons that follow, VICE's motion to dismiss is GRANTED.

## I.  BACKGROUND

For the purpose of resolving Defendant's motion to dismiss, the Court accepts all well-pleaded facts in the Amended Complaint as true, and draws all reasonable inferences in Plaintiff's favor. *See Kassner v. 2nd Ave. Delicatessen, Inc.,* 496 F.3d 229, 237 (2d Cir. 2007).

Plaintiff BYD is one of the world's largest producers and suppliers of electric vehicles, solar panels, lithium batteries, and protective masks and equipment, among other products. Dkt. No. 1 ("Compl.") ¶¶ 2–3, 18. Berkshire Hathaway is one of BYD's major investors. *Id.* ¶ 2. In the early months of the COVID-19 pandemic, BYD won a contract to supply the state of California with around $1 billion worth of masks. *Id.*

On April 11, 2020, VICE published an article on its website with the headline *Trump Blacklisted This Chinese Company. Now It's Making Coronavirus Masks for U.S. Hospitals*. *Id.* ¶¶ 4, 28 & Ex. B. As relevant here, the article discusses the legislative history of a provision of the 2020 National Defense Authorization Act that prohibited the use of federal funds for the

purchase of rail cars and buses from companies owned or subsidized by the Chinese

government—a group of which BYD was a part.  *See* Compl. ¶¶ 10, 29 & Ex. B.  And the article

also discussed a report by a group called the Australian Strategic Policy Institute ("ASPI" and

"ASPI Report"), which included BYD in a list of 83 companies that had been associated with

factories that had allegedly used forced Uyghur labor.  *See* Compl. ¶¶ 5, 23–25 & Ex. A at 3, 5;

*see also* Compl., Ex. B.  BYD alleges that ASPI is biased and notes that the organization has

been "repeatedly criticized publicly for making false statements of fact, with an anti-Chinese

bias."  *Id.* ¶¶ 5, 19–22.

Besides including BYD on that list of companies, the ASPI Report also discusses BYD's

relationship to one of the subsidiaries that allegedly used forced labor, though in its discussion

the Report does not allege that the factory ever produced any products or raw materials for BYD.

Compl. ¶ 6.  The Report mentions BYD's relationship to one of its suppliers named Dongguan

Yidong Electronic Co. Ltd., and also mentions that a subsidiary of Dongguan employed 105

Uyghur workers.  *Id.* ¶ 27.

In bringing this defamation action, BYD claims that VICE misrepresented the ASPI

Report—specifically, that contrary to the representations made in the article, the report did not

state that BYD used forced Uyghur labor in its supply chain.  *Id.* ¶¶ 4, 6.  And BYD also objects

to the headline of the article, which included the word "blacklisted;" BYD insists that no such

"blacklist" ever existed.  *Id.* ¶¶ 8–11.  According to BYD, members of Congress included that

provision in the NDAA due to the actions of a different Chinese company, even though BYD

concedes that it was one of the companies affected by the legislation.  *Id.* ¶¶ 10, 29.  Still, BYD

insists that the reference to a "blacklist" misrepresents the purpose behind the inclusion of that

legislation by creating the appearance that Congress specifically targeted BYD.  *Id.*  BYD

contends, in sum, that regardless of its criticisms of the ASPI Report, the Report never stated or intimated that BYD used forced Uyghur labor in its supply chain. *Id.* ¶ 30.

According to BYD, the article was defamatory for both of those reasons: First, for its allegations regarding Uyghur labor and BYD, and second, for its use of the word "blacklist." *Id.* ¶ 31. And BYD claims that VICE published those statements despite knowing that there was no "blacklist" and that the ASPI Report did not support the claim that BYD used forced labor in its supply chain. *Id.* BYD also alleges that VICE cited the ASPI Report with reckless disregard of ASPI's reliability. *Id.* According to the Complaint, several third parties have cited the VICE article as a reason to delay or end contemplated business transactions with BYD. *Id.* ¶ 32. And BYD insists that the article will continue to effect significant reputational damage. *Id.* Two days after the article was published, BYD requested a retraction, but on April 20, 2020, VICE refused BYD's request. *Id.* ¶ 33.

On April 27, 2020, BYD initiated this defamation action against VICE. *See* Dkt. No. 1. VICE moved to dismiss the Complaint on August 17, 2020. Dkt. No. 17. The Court then offered BYD an opportunity to amend the Complaint, warning that declining to amend would constitute a waiver of its right to use the amendment process to cure any defects made apparent by VICE's motion to dismiss. Dkt. No. 21 (citing *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC.*, 797 F.3d 160, 190 (2d Cir. 2015)). BYD declined to amend, Dkt. No. 22, and it filed its opposition to the motion to dismiss on September 14, 2020, *see* Dkt. No. 23. The motion is fully briefed. *See* Dkt. No. 26.

The Court has diversity jurisdiction under 28 U.S.C. § 1332, because there is complete diversity between the parties and because the amount in controversy surpasses $75,000. *See* Compl. ¶¶ 13–15. The Court has personal jurisdiction over VICE because VICE is based in New

York, and venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2) because VICE is located in this

district and because the article was edited and published in this district.  *Id.* ¶¶ 14, 16.

## II.    LEGAL STANDARD

When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule of

Civil Procedure 12(b)(6), a court must accept as true all well-pleaded facts and draw all

reasonable inferences in the light most favorable to the non-moving party.  *See Kassner v. 2nd*

*Ave. Delicatessen, Inc.,* 496 F.3d 229, 237 (2d Cir. 2007).  Although factual allegations are

afforded a presumption of truth, a court is "not bound to accept as true a legal conclusion

couched as a factual allegation."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting

*Papasan v. Allain,* 478 U.S. 265, 286 (1986)) (internal quotation mark omitted).

"To survive a motion to dismiss, the plaintiff's pleading must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570); *see also Biro v. Conde*

*Nast* ("*Biro II*"), 807 F.3d 541, 544–45 (2d Cir. 2015) ("*Iqbal* makes clear that, Rule 9(b)'s

language notwithstanding, Rule 8's plausibility standard applies to pleading intent").  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Twombly*, 550 U.S.

at 570.  A plaintiff is not required to provide "detailed factual allegations" in the complaint.  *Id.*

at 555.

In addition to the allegations in the complaint itself, a court may consider documents

attached as exhibits, incorporated by reference, or relied upon by the plaintiff in bringing suit, as

well as any judicially noticeable matters. *See Halebian v. Berv,* 644 F.3d 122, 131 n.7 (2d Cir.

2011); *In re Harbinger Capital Partners Funds Investor Litig.,* No. 12-CV-1244 (AJN), 2013

WL 5441754, at *15 n.6 (S.D.N.Y. Sept. 30, 2013).  "If a document relied on in the complaint

contradicts allegations in the complaint, the document, not the allegations, control, and the court

need not accept the allegations in the complaint as true."  *TufAmerica, Inc. v. Diamond,* 968

F.Supp.2d 588, 592 (S.D.N.Y. 2013) (quoting *Poindexter v. EMI Record Grp. Inc.,* No. 11-CV-

559 (LTS), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012)) (internal quotation marks

omitted).

## III.   DISCUSSION

BYD brings a single cause of action for defamation.  *See* Compl. ¶¶ 34–38.  In moving to

dismiss, VICE principally argues that the article's headline is a fair index of its truthful content

and that the headline is a privileged fair report of governmental proceedings.  *See* Dkt. No. 18

("Def. Br.") at 10–14.  VICE further argues that its reporting on the ASPI report is not

actionable, *id.* at 15–16, that VICE's reliance on the ASPI Report precludes a finding of actual

malice, *id.* 16–23, and that VICE's reporting is covered by the neutral reportage privilege, *id.* at

23.

New York law applies to this diversity action.  "In diversity jurisdiction cases such as

this, it is well settled that a federal court must look to the choice of law rules of the forum state."

*Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (citations omitted).  The "preferred

analytical tool in tort cases" under New York choice of law rules "is to apply 'interest analysis,'

where the policies underlying the competing laws are considered."  *Fin. One Pub. Co. v. Lehman

Bros. Special Fin.*, 414 F.3d 325, 336 (2d Cir. 2005) (cleaned up).  Here, VICE is headquartered

in New York, and the VICE article was published in New York.  BYD has not disputed this

application, and both sides cite exclusively to New York law in their respective briefings.

Under New York law, a defamation plaintiff must establish "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019); *see also Celle v. Filipino Reporter Enterps. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000) (citations omitted); *Kimso Apartments, LLC v. Rivera*, 180 A.D.3d 1033, 1034 (2d Dep't 2020). A public-figure plaintiff must also prove "that an allegedly libelous statement was made with actual malice, that is, made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Palin*, 940 F.3d at 809 (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173–74 (2d Cir. 2001)).

At the motion to dismiss stage, the Court "must decide whether the statements, considered in the context of the entire publication, are reasonably susceptible of a defamatory connotation, such that the issue is worthy of submission to a jury." *Palin*, 940 F.3d at 809 (citations and quotations omitted); *see also Levin v. McPhee*, 917 F. Supp. 230, 236 (S.D.N.Y. 1996), *aff'd*, 119 F.3d 189 (2d Cir. 1997) (describing the court's role in defamation cases as determining "as a matter of law whether the statements complained of are reasonably susceptible of a defamatory construction"). To do this, the Court must assess "not only . . . the meaning of the words as they would be commonly understood . . . but [also] the words considered in the context of their publication." *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir. 1997) (citing *Armstrong v. Simon & Schuster, Inc.*, 85 N.Y.2d 373, 381 (1995)). Thus, allegedly defamatory statements "must be perused as the average reader would against the 'whole apparent scope and intent' of the writing." *Celle*, 209 F.3d at 177 (quoting *November v. Time Inc.*, 13 N.Y. 2d 175, 178 (1963)). If "the challenged statements are 'susceptible of multiple meanings, some of which are not defamatory,' the court may not conclude, as a matter of law, that the statements are or are

not defamatory." *Kesner v. Dow Jones & Co., Inc.*, No. 20-CV-3454 (PAE), 2021 WL 256949, at *10–11 (S.D.N.Y. Jan. 26, 2021) (quoting *Celle*, 209 F.3d at 178).

### A. BYD is a limited-purpose public figure

As a threshold matter, the Court must determine whether BYD is a public figure for purposes of its defamation claim. The Supreme Court has distinguished between two kinds of "public figures." A general-purpose public figure is one who has "assumed [a] role[] of especial prominence in the affairs of society." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974). A limited-purpose public figure, meanwhile, is one who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." *Id.* at 351–52. This doctrine is based upon "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open. . . ." *Contemp. Mission, Inc. v. New York Times Co.*, 842 F.2d 612, 619 (2d Cir. 1988) (quoting *New York Times v. Sullivan,* 376 U.S. 254, 270 (1964)).

VICE argues that BYD is at least a limited purpose public figure. *See* Def. Br. at 17–18. BYD does not oppose VICE's contention, and in its opposition brief it "assumes *arguendo* that its public role in the distribution of needed supplies in the COVID-19 crisis makes it at least a limited purpose public figure." Dkt. No. 23 ("Pl. Opp. Br.") at 6 n.1. Furthermore, the Complaint is pled as a public-figure defamation action and, in BYD's brief in opposition, BYD only recites the actual malice standard that applies if plaintiffs are public figures. *See Greene v. Paramount Pictures Corp.*, 340 F. Supp. 3d 161, 169 (E.D.N.Y. 2018), *aff'd*, 813 F. App'x 728 (2d Cir. 2020) ("Plaintiff elected not to pursue a private-figure defamation claim, leaving only his public-figure claim based on actual malice."). In addition, BYD's "failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue." *Kao v.*

*British Airways, PLC*, No. 17-CV-0232 (LGS), 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018)

(citing *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 38–39 (S.D.N.Y. 2015)).  As BYD has

failed to oppose VICE's specific argument that it is at least a limited purpose public figure, and

as BYD has opted to pursue only its public figure claim based on actual malice, the Court

concludes that BYD is a limited purpose public figure for purposes of this defamation claim.

### B.  BYD has failed to state a claim that article's headline is defamatory

The Court turns first to BYD's claim that the article's headline—"Trump Blacklisted

This Chinese Company.  Now It's Making Coronavirus Masks for U.S. Hospitals"—is

defamatory.  According to BYD, the headline is defamatory because the reference to a

"blacklist" is "qualitatively different from a statute that simply prohibits certain governmental

actions."  Pl. Opp. Br. at 16.  Here, BYD emphasizes the lack of any "list" as further proof of the

defamatory nature of the headline.  Further, BYD argues that the headline is actionable because

it contains several false statements of fact—including that there was a "blacklist," that the

legislation specifically targeted BYD, and that it was Congress and not President Trump that

mentioned BYD.  Pl. Opp. Br. at 17–21.

Under New York law, an article's headline is not actionable in a defamation case if it is

"a 'fair index' of the 'substantially accurate' material included in the article."  *Test Masters*

*Educ. Servs., Inc. v. NYP Holdings, Inc.*, 603 F. Supp. 2d 584, 589 (S.D.N.Y. 2009) (quoting

*Gunduz v. New York Post Co., Inc.,* 188 A.D. 2d 294, 294 (1st Dep't 1992)).  Consistent with

this, "[a] newspaper need not choose the most delicate word available in constructing its

headline," and it is instead "permitted some drama in grabbing its reader's attention."  *Id.*  And

even headlines that are "unfortunate, sensationalist and drafted simply to garner attention" are

not actionable if they are a "fair index of the underlying article."  *St. Louis v. NYP Holdings, Inc.*,

2017 WL 887255, at *2 (Sup Ct. N.Y. Cty. Feb. 6, 2017).  Whether "a headline is a fair index of the body of the article is a question of law."  *Kesner v. Dow Jones & Co., Inc.*, No. 20-CV-3454 (PAE), 2021 WL 256949, at *12 (citing *Mondello v. Newsday, Inc.*, 6 A.D.3d 586, 587 (2d Dep't 2004)).  In conducting this analysis, "[c]ontext is key," and "[t]he dispositive inquiry is whether a reasonable reader could have concluded that the article[] w[as] conveying [defamatory] facts." *Triano v. Gannett Satellite Info. Network, Inc.*, No. 09-CV-2497 (KMK), 2010 WL 3932334, at *5 (S.D.N.Y. Sept. 29, 2010) (quoting *Finkel v. Dauber*, 906 N.Y.S. 2d 697, 701, 702 (Sup. Ct. 2010)) (alterations in original).  In addition, where, as here, the headline does not identify the defamation plaintiff by name, the headline is "not independently actionable as defamation" and "must instead be evaluated in the context of the entire article."  *Kesner*, 2021 WL 256949, at *16 (citation omitted); *see also Triano*, 2010 WL 3932334, at *4 (collecting cases).

Applying these principles, the Court concludes that as a matter of law, the headline fairly indexes the content of the article and that the fair index privilege applies.  BYD does not contend that the article's summary of the NDAA legislative proceedings is inaccurate or false; it challenges the headline on the basis of its contention that President Trump did not "blacklist" BYD.  But the article makes clear that the headline references the NDAA.  Its second paragraph explains that BYD was "prohibited by law from bidding for some federal contracts in the United States."  And in providing context for the legislation, the article also explains that the NDAA "bans federal funds from being used to buy BYD electric buses" and that President Donald Trump "signed the ban into law in December." *See* Compl., Ex. B at 68.  The article also provides context for why BYD, among a select few other companies, was within the scope of the provision, including Senator Jon Cornyn's reference to BYD in explaining his reasons for supporting it.  And while the headline references President Trump as the relevant actor, the

article also makes clear that Congress included the provision in the NDAA and that President Trump's role was limited to signing the NDAA into law.

BYD takes umbrage at the reference to a "blacklist," but the context of the article makes clear to a reasonable reader that the reference to a "blacklist" invokes a more colloquial use— one that at most constitutes "rhetorical hyperbole." *Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970). Analogously, in *McDougal v. Fox News Network, LLC* the court concluded that the use of the word "extortion" was not actionable, even though the elements of extortion were not present, because the use of the word "extortion" was mere rhetorical hyperbole. *See McDougal v. Fox News Network, LLC*, No. 19-CV-11161 (MKV), 2020 WL 5731954, at *5–6 (S.D.N.Y. Sept. 24, 2020). That same principle governs here. The headline conveys the substantial truth that the relevant provision of the NDAA sought to address the effect that BYD, as one of a few companies affected by the provision, could outbid American rivals. And because the article sets forth the full context of the NDAA, no reasonable reader would conclude that the headline referenced a literal blacklist. "[A] person reading the article"—as necessary to identify BYD as the company referenced in the headline—"would understand the headline's locution." *Kesner*, 2021 WL 256949, at *16; *see also Triano*, 2010 WL 3932334, at *5.

The cases on which BYD relies are readily distinguishable, for they involve headlines that directly named the defamation plaintiffs and were thus independently actionable. In *Schermerhorn v. Rosenberg*, 73 A.D.2d 276 (2d Dep't 1980), for instance, the headline— "Schermerhorn Says NDDC Can Do Without Blacks"—identified the plaintiff by name. The court reasoned that "[a] headline is often all that is read by the casual reader and therefore separately carries a potential for injury as great as any other false publication." *Schermerhorn*, 73 A.D. 2d at 287. That is inapplicable here; to understand that the headline referenced BYD, a

reasonable reader would have to read the article, and in doing so would understand the full

context and the hyperbolic nature of the language.  In addition, unlike here, the headline in

*Schermerhorn* was defamatory because it falsely attributed speech to the plaintiff.  *See White v.*

*Berkshire-Hathaway, Inc.*, 802 N.Y.S. 2d 910, 912 (Sup. Ct. 2005); *Chaiken v. VV Publ'g Corp.*,

907 F. Supp. 689, 698 (S.D.N.Y. 1995), *aff'd sub nom. Chaiken v. VV Pub. Corp.*, 119 F.3d 1018

(2d Cir. 1997).  Along similar lines, in *Kaelin v. Globe Communications Corp.*, 162 F.3d 1036

(9th Cir. 1998), the court concluded that the clear import of the headline—which read "COPS

THINK KATO DID IT"—was that the defamation plaintiff was suspected of murder, whereas

the article, located 17 pages away from the cover, made clear that he was suspected only of

perjury.  *Id.* at 1041.  The distance between the headline and the article exacerbated the

potentially misleading nature of the headline.  By contrast, the headline here does no such thing;

a reader would not know that the headline referred to BYD until reading the article, and no

reasonable reader would conclude that the headline's reference to a "blacklist" was meant to be

literal or that the headline contradicts the substance of the article.

Separately, BYD's claim regarding the headline also fails because the headline and the

article are privileged under New York Civil Rights Law Section 74, which provides, in relevant

part, that "[a] civil action cannot be maintained against any person, firm or corporation, for the

publication of a fair and true report of any judicial proceeding, legislative proceeding or other

official proceeding."  The New York Court of Appeals has explained that "[w]hen determining

whether an article constitutes a 'fair and true' report" for purposes of Section 74, "the language

used therein should not be dissected and analyzed with a lexicographer's precision."  *Holy Spirit*

*Ass'n for Unification of World Christianity v. New York Times Co.*, 49 N.Y. 2d 63, 68 (1979).

Accordingly, "[a] fair and true report admits of some liberality; the exact words of every

proceeding need not be given if the substance be substantially stated." *Id.* at 67 (citation omitted). VICE contends, convincingly, that its reporting on the NDAA and on the inclusion of that provision constitutes a fair and true report of a legislative proceeding as contemplated by Section 74.

BYD does not respond to this argument in its opposition brief. "Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue." *Kao v. Brit. Airways, PLC*, No. 17-CV-0232 (LGS), 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018) (citing *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 38–39 (S.D.N.Y. 2015)). Accordingly, this provides separate grounds to conclude that the headline and the relevant content of the article are privileged and therefore not actionable. Even if BYD had opposed this argument, however, the Court would conclude that the article provides a substantially fair and true report of the legislative proceedings that leave the reader with an accurate impression of how the NDAA came to bar federal funds from going to BYD. "New York courts adopt a 'liberal interpretation of the 'fair and true report' standard of . . . § 74 so as to provide broad protection to news accounts of . . . proceedings." *Friedman v. Bloomberg L.P.*, 884 F.3d 83, 93 (2d Cir. 2017) (quoting *Becher v. Troy Publ'g Co.*, 183 A.D. 2d 230, 233 (N.Y. App. Div. 3d Dep't 1992) (alterations in original). Thus, "[a] statement is deemed a fair and true report if it is 'substantially accurate,' that is 'if, despite minor inaccuracies, it does not produce a different effect on a reader than would a report containing the precise truth.'" *Id.* (quoting *Karades v. Ackerley Grp. Inc.*, 423 F.3d 107, 119 (2d Cir. 2005)). The headline here and the corresponding text in the article fall within the scope of § 74, for even if the language used is at times hyperbolic, the discussion of the legislative process is "fair and true" and conveys accurately the nature of the proceedings. *Test Masters*, 603 F. Supp. 2d at 589.

Under both the fair index privilege and New York Civil Rights Law Section 74, the headline is nonactionable for defamation and BYD's claims relying on the headline fail on these bases.

### C.  BYD fails to plausibly allege actual malice

In addition to challenging the headline, BYD claims that several aspects of the article as they relate to the Report are defamatory.  To plausibly plead a defamation claim, a public-figure plaintiff must a show "that an allegedly libelous statement was made with actual malice, that is, made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Palin*, 940 F.3d at 809 (quoting *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 173–74 (2d Cir. 2001)).

The actual malice standard is subjective.  *Khan v. New York Times Co.*, 269 A.D. 2d 74, 76 (1st Dep't 2000).  "A 'reckless disregard' for the truth requires more than a departure from reasonably prudent conduct."  *Id.* at 77.  The standard covers "only those false statements made with the high degree of awareness of their probable falsity."  *Garrison v. State of La.*, 379 U.S. 64, 74 (1964).  The allegations, that is, must "permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [its] publication."  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *see also Biro II*,  807 F.3d at 546.  To survive a motion to dismiss, a plaintiff may plausibly plead actual malice by alleging that "a story [was] fabricated by the defendant" if the defendant provides no source for the allegedly defamatory statements or if the purported source denies giving the information," or by "point[ing] to the fact that the allegedly defamatory statements were 'based wholly on an unverified anonymous telephone call' or were published despite 'obvious [specified] reasons to doubt the veracity of the informant or the accuracy of his reports,'" or by emphasizing the "'inherently improbable' nature of the statements themselves."

*Biro II*, 807 F.3d at 545–46 (citing *St. Amant,* 390 U.S. at 732).  While the list is not exhaustive, it provides a useful guidepost for the kinds of allegations that are pled with sufficient specificity to survive a motion to dismiss.

### 1.  BYD fails to plausibly allege that VICE acted knowingly

The Court first assesses whether BYD has plausibly pled that VICE acted knowingly. BYD sets forth no nonconclusory allegations to support the proposition that VICE made any defamatory statements with knowledge that the statements were false.  At most, its conclusory allegations rely on a purported inference that VICE must have known that it was misreporting the contents of the Report in its article or that the headline was drafted with actual malice.  *See* Compl. ¶¶ 4, 7, 31; Pl. Opp. Br. at 6, 8.  Even drawing all reasonable inferences in BYD's favor, however, the claim fails.

BYD fails to plausibly establish any basis of subjective knowledge.  The Complaint alleges no nonconclusory facts that support the proposition that VICE knew that it was reporting falsities.  Instead, in conclusory fashion the Complaint asserts that "[p]rior to publication, VICE Media knew that there was no 'blacklist', and knew that the contents of the ASPI Report did not support its claim regarding BYD's alleged use of forced labor in its supply chain."  Compl. ¶ 31. In addition, at no point does BYD make any allegations about specific individuals at VICE to whom such knowledge could be imputed.  This is relevant because "the state of mind required for actual malice would have to be brought home to the persons in the . . . organization having responsibility for the publication" of the article.  *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964).  Even at this juncture, the allegations are insufficient.  *See Pippen v. NBCUniversal Media, LLC,* 734 F.3d 610, 614 (7th Cir. 2013) ("States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible.").

It is true that "court[s] typically will infer actual malice from objective facts," in recognition of the fact that " a defendant in a defamation action will rarely admit that he published the relevant statements with actual malice." *Biro II*, 807 F.3d at 545 (citing *Celle*, 209 at 183 (quotation marks omitted)). Thus, that the Complaint is devoid of any nonconclusory allegations does not end the inquiry into whether actual malice is adequately pled. Even then, none of the objective facts alleged in the Complaint plausibly support a reasonable inference that anyone at VICE knowingly falsified or misrepresented what the ASPI Report said.

To allege actual malice, BYD asserts that subjective knowledge can be assumed due to the fact that, according to BYD, the headline is misleading and that the article misstates what the ASPI Report said about BYD. The argument appears to conflate the falsity element of a defamation claim with the actual malice requirement that applies to limited-purpose public figures. But "inaccuracy itself will not demonstrate 'actual malice' in a libel case." *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341, 1350 (S.D.N.Y. 1977); *see also Bose Corp. v. Consumers Union of United States,* 466 U.S. 485, 511 & n.30 (1984) (noting that falsity does not establish knowledge of falsity or reckless disregard of truth); *Kramer v. City of New York*, No. 04-CV-106 (HB), 2004 WL 2429811, at *8 (S.D.N.Y. Nov. 1, 2004). Without any corroborating allegations that could establish that someone at VICE knew that it was misrepresenting the contents of the ASPI Report, the argument that subjective knowledge can be inferred from the purportedly false statements does not conform to the plausibility standard that applies to pleading actual malice. *See Biro II*, 807 F.3d at 545.

Even assuming that BYD could establish a plausible inference in such a manner, however, the claim of subjective knowledge in this case is unavailing. Notably, the article does not assert as truth that BYD had Uyghurs working in its supply chains; rather, it states that BYD

was one of the 83 companies "identified in the report."  Compl., Ex. B at 73.  Furthermore, the

article also includes BYD's previous statements denying allegations of labor abuses and noting

that "the company has been called a 'model employer' by labor advocates."  *Id.* at 73–74.  It is

true, of course, that "merely reporting what another has said obviously does not insulate a

reporter from liability for defamation."  *Stern v. Cosby*, 645 F. Supp. 2d 258, 282 (S.D.N.Y.

2009).  But the manner in which the information was presented is nonetheless relevant; rather

than VICE stating as truth the allegations contained in the Report, it provided a link to the Report

and it cited BYD's prior denials of similar allegations.  *See, e.g., Harte–Hanks Comms., Inc. v.*

*Connaughton,* 491 U.S. 657, 695 (1989) (Blackmun, J., concurring) ("[T]his Court's decisions

dealing with actual malice have placed considerable emphasis on the manner in which the

allegedly false content was presented by the publisher.  Under our precedents, I find significant

the fact that the article in this case accurately portrayed Thompson's allegations *as* allegations,

and also printed Connaughton's partial denial of their truth.") (citations omitted)).  *See also Ryan*

*v. Brooks,* 634 F.2d 726, 729, 732–34 (4th Cir. 1980) (declining to find actual malice as a matter

of law where the defendant merely summarized two prior news accounts); *Adelson v. Harris*, 973

F. Supp. 2d 467, 502–03 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017) (collecting cases).

　　　To argue that BYD acted with subjective knowledge of the alleged falsity of its

statements, BYD relies on *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991), going so

far as to say that its theory of actual malice is "the same" as the Supreme Court's theory in

*Masson*.  *See* Pl. Opp. Br. at 9.  But the present case is readily distinguishable.  The key issue in

*Masson* involved the journalist's fabrication of quotations—there, the journalist *quoted* the

plaintiff as saying things that the plaintiff never said.  *See Masson*, 501 U.S. at 502.  The Court in

*Masson* held that minor alterations of actual quotations were not actionable unless those alterations effected a "material change in the meaning conveyed by the statement." *Id.* at 517.

But *Masson* is of limited utility to BYD because, even read liberally and finding all inferences in its favor, BYD's claim is not that VICE fabricated any quotations; the core of BYD's claim is that VICE misrepresented what the ASPI Report actually found, not that VICE quoted the report as saying something it never said. Contrary to the alterations at issue in *Masson*, BYD's allegation of subjective knowledge is further rendered implausible because the objected-to language in the article—that "BYD was one of 83 companies identified in the report as using forced Uighur labor in its supply chain," *see* Compl. ¶ 30—parallels certain parts of the ASPI Report. The Report states that "Uyghurs are working in factories that are in the supply chains of at least 83 well-known global brands in the technology, clothing, and automotive sectors," and it lists BYD as one of those 83 brands. Compl., Ex. A, ASPI Report, at 3, 5. And the Report also claims that "27 factories in nine Chinese provinces that are using Uyghur labour transferred from Xinjiang since 2017," and that those "claim to be part of the supply chain of 83 well-known global brands," including BYD. *Id.* at 4–5. The circumstances are thus different from the misquoting at issue in *Masson*. *See Themed Restaurants, Inc. v. Zagat Surv., LLC*, 781 N.Y.S.2d 441, 447 (Sup. Ct. 2004), *aff'd*, 21 A.D. 3d 826 (1st Dep't 2005) (in resolving a motion to dismiss, noting that "neither imprecise phrasing nor simple misinterpretation render a statement actionable"). As the Court explained in *Masson*, "[i]f every alteration constituted the falsity required to prove actual malice, the practice of journalism, which the First Amendment standard is designed to protect, would require a radical change, one inconsistent with our precedents and First Amendment principles." *Masson*, 501 U.S. at 514. Even drawing all reasonable inferences in BYD's favor, the alleged misrepresentations in the article do not fall

within the ambit of material alterations that might plausibly sustain an actual malice claim without any supporting factual allegations.

BYD's reliance on *Palin v. New York Times Co*., 940 F.3d 804 (2d Cir. 2019), is also misplaced.  In *Palin*, the Second Circuit concluded that actual malice was adequately alleged because (1) the speaker of defamatory statements possessed an editorial and political advocacy background sufficient to suggest he published the statements with deliberate or reckless disregard for their truth, in light of the fact that he had previously seen publication of articles that dispelled the allegations of the publication at issue and that there were specific and nonconclusory allegations regarding his political bias toward the plaintiff; (2) the drafting and editorial process of the statements in question lent itself to a reasonable inference of deliberate or reckless falsification; (3) the article hyperlinked to a source that directly contradicted the allegedly defamatory statements, which further supported such an inference; and (4) the newspaper's subsequent correction to the allegedly defamatory article did not undermine the plausibility of that inference.  *See Palin*, 940 F.3d at 813–15; *see also McDougal v. Fox News Network, LLC*, No. 19-CV-11161 (MKV), 2020 WL 5731954, at *8 (S.D.N.Y. Sept. 24, 2020).  Unlike in *Palin*, there are no allegations here to suggest that any journalists at VICE had a similar editorial background, and the only allegations of bias are impermissibly conclusory.  *See* Pl. Opp. Br. at 1.  Furthermore, there are no factual allegations regarding the drafting or editorial process of the statements in question that would render plausible a claim of actual malice.  Finally, unlike in *Palin*, BYD advances no nonconclusory allegations of subjective knowledge; in *Palin*, the Second Circuit deemed it relevant that the editor had previously served as an editor for publications that had debunked the allegedly defamatory statements.  *See Palin*, 940 F.3d at 814.  Indeed, further distinguishing this case from *Palin* is the fact that there are no allegations

specific to the individuals responsible for the allegedly defamatory statements.  *See Sullivan*, 376
U.S. at 287.  BYD's theory that *Palin* compels denial of the motion to dismiss because at the
motion to dismiss stage, "[t]he test is whether the complaint is plausible, not whether it is less
plausible than an alternative explanation," *see* Pl Opp. Br. at 10–11 (quoting *Palin*, 940 F.3d at
815), misses the point.  The Court is not resting its conclusion on a theory that VICE's theory is
more plausible than BYD's; rather, the Court concludes that BYD's theory that VICE fabricated
something the report said is implausible, considering the parallels between what is stated in the
Report and what BYD objects to in the article.

At this stage, BYD is, of course, entitled to have that all reasonable inferences drawn in
its favor.  But its claim that VICE acted knowingly is unsupported by any factual allegations in
the Complaint.  And even at this juncture, BYD's claim that knowledge can be inferred from the
Complaint on the basis of the text of the article is implausible.  "The truth of factual allegations
that are contradicted by documents properly considered on a motion to dismiss need not be
accepted."  *In re Aegon N.V. Sec. Litig.*, No. 03-CV-0603 (RWS), 2004 WL 1415973, at *5
(S.D.N.Y. June 23, 2004); *see also Rapoport v. Asia Elecs. Holding Co.,* 88 F. Supp. 2d 179, 184
(S.D.N.Y. 2000).  For these reasons, BYD has failed to state a claim that VICE acted with
knowledge of the alleged falsities, even after drawing all reasonable inferences in its favor.

### 2.  BYD fails to plausibly allege that VICE acted with reckless disregard for the truth

The Court next assesses whether the facts in the Complaint plausibly establish that VICE
acted with reckless disregard for the truth.  For purposes of actual malice, recklessness is
measured not by "whether a reasonably prudent man would have published, or would have
investigated before publishing," but instead "whether there is sufficient evidence 'to permit the
conclusion that the defendant in fact entertained serious doubts as to the truth of his

19

publication.'" *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) (citing *St. Amant*, 390 U.S. at 731).

As above, there are no factual allegations regarding VICE's subjective knowledge, including that VICE harbored any doubts about the veracity of its reporting. BYD recapitulates its arguments as to actual knowledge by framing them in the alternative as reckless disregard for the truth. *See* Pl. Opp. Br. at 1. But as above, without any factual predicate to support the conclusory assertion that VICE acted with reckless disregard for the truth, any claim as to an inference of actual malice based on the text of the article fails. Even read in the light most favorable to BYD, the article's language, standing alone, does not surpass actual malice's "high bar." *McDougal v. Fox News Network, LLC*, No. 19-CV-11161 (MKV), 2020 WL 5731954, at *8 (S.D.N.Y. Sept. 24, 2020).

To the extent that BYD argues that VICE acted with actual malice by relying on a single source, the claim runs contrary to longstanding principles governing defamation suits. "[R]eliance on anonymous or unreliable sources without further investigation *may* support an inference of actual malice," where the plaintiff includes additional allegations to buttress that inference. *Biro II*, 807 F.3d at 546 (emphasis added); *see also Cabello-Rondon v. Dow Jones & Co., Inc.*, 720 F. App'x 87, 89 (2d Cir. 2018). BYD alleges that ASPI is "biased and discriminatory against China and Chinese businesses," that "ASPI has been extensively and publicly criticized for its work," and that "[t]he Wikipedia page for ASPI contains a section devoted to criticism of the organization." Compl. ¶¶ 19–20. And BYD also alleges that ASPI has "an anti-China agenda" and that it "receives funding from strategic rivals of the Chinese government." *Id.* ¶¶ 21–22. But none of these allegations, even read with all inferences drawn in BYD's favor, plausibly establish that VICE recklessly disregarded the truth in reporting, as

none come close to plausibly alleging that anyone at VICE was "subjectively aware that the source was unreliable." *Secord v. Cockburn,* 747 F. Supp. 779, 789 (D.D.C. 1990).

BYD's claim that VICE should have investigated ASPI's reputation prior to citing the Report also fails as a matter of law.  "A failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989).  "[T]here is no rule that an author must conduct an investigation absent a showing that he had reason to doubt the veracity of his sources, or possessed other information leading him to question the truth of his assertion." *World Boxing Council v. Cosell*, 715 F. Supp. 1259, 1266 (S.D.N.Y. 1989); *see also Cabello-Rondon v. Dow Jones & Co., Inc.*, No. 16-CV-3346 (KBF), 2017 WL 3531551, at *9 (S.D.N.Y. Aug. 16, 2017), *aff'd*, 720 F. App'x 87 (2d Cir. 2018).  None of the facts in the Complaint allege that VICE had "obvious reasons" to doubt the veracity of ASPI prior to publishing or that it possessed information that should have put it on notice as to the veracity of the report.  *See Biro v. Conde Nast* ("*Biro I*"), 963 F. Supp. 2d 255, 278, 285 (S.D.N.Y. 2013), *aff'd*, 807 F.3d 541 (2d Cir. 2015), and *aff'd*, 622 F. App'x 67 (2d Cir. 2015); *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 56, 58 (1st Cir. 2012) (noting that a failure to perform an "additional investigation" was insufficient to allege actual malice).

BYD asserts that had VICE researched ASPI's reputation, including on Wikipedia, it would have been put on notice that ASPI has been criticized in the past for alleged bias.  *See* Compl. ¶¶ 20–22.  But BYD's theory would impose on VICE a duty to investigate even in circumstances where VICE had no subjective reason to doubt the veracity of its sources; the claim is essentially that had VICE investigated, it would have learned about the criticisms that have been directed at ASPI in the past.  In light of the fact that the Complaint is devoid of any

factual allegations to support the proposition that there were "obvious reason[s]" why VICE should have been on notice that it had a duty to investigate further, such a failure to investigate would at most constitute negligence.  *Cf. Schatz*, 669 F.3d at 58.  Indeed, other than the Complaint's conclusory language, BYD's allegations amount to a claim that VICE acted "negligently" or that it would have been "prudent" to verify prior to publishing.  *Biro I*, 963 F. Supp. 2d at 278.  But that is not the test for actual malice; "the operative question is whether a defendant failed to investigate in the face of 'actual, subjective doubts as to the accuracy of the story.'"  *Id.*  Even read in the light most favorable to BYD, the facts alleged in the Complaint do not support such a theory, and the allegations do not rise to the level of actual malice.

In sum, stripping the Complaint from its barebones assertions of subjective knowledge makes clear that the remaining factual content does not "permit[] the reasonable inference that the defendant is liable" for the kind of subjective knowledge BYD is claiming here.  *Shay v. Walters,* 702 F.3d 76, 82–83 (1st Cir. 2012) (internal quotation marks and citation omitted); *see also Biro I*, 963 F. Supp. 2d at 276, 280.  There are no facts to support a theory of subjective knowledge, even after drawing all reasonable inferences in BYD's favor, such that a finding of actual malice would be proper on those grounds.  And in light of the deficit of any nonconclusory allegations that VICE acted with knowledge of falsity, BYD's claim as to knowledge fails.[1]

Because BYD has failed to plead facts that plausibly establish that VICE acted with actual malice, its defamation claim fails as a matter of law.  Accordingly, the motion to dismiss is GRANTED.

---

[1] VICE also argues that the neutral reportage privilege protects its statements regarding the ASPI Report.  *See* Def. Br. at 23–25.  The Court does not reach this argument because it concludes that BYD has failed to plausibly allege actual malice.

### D.  The dismissal is with prejudice

BYD was given an opportunity to amend after VICE filed its motion to dismiss, Dkt. No. 21, and it opted not to do so, Dkt. No. 22.  Because BYD was previously afforded the opportunity to amend its Complaint, the Complaint is dismissed with prejudice.  *See De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 72 (2d Cir. 1996) (dismissal with prejudice is proper when "a party has been given ample prior opportunity to allege a claim").  In any event, leave to amend may be denied "when amendment would be futile."  *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006).  The Court concludes that amendment would be futile, which provides further grounds for dismissal with prejudice.

## IV.   CONCLUSION

For the reasons stated above, VICE's motion to dismiss is GRANTED with prejudice.  Because the Court resolves this motion on the papers, VICE's request for oral argument, Dkt. No. 27, is denied.  The Clerk of Court is respectfully directed to enter judgment and close the case.

This resolves Dkt. Nos. 17 and 27.

SO ORDERED.


Dated:  March 31, 2021
        New York, New York

_____
      ALISON J. NATHAN
    United States District Judge

23